**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMERICAN SURGICAL ARTS, P.C.<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | File No. |

**COMPLAINT**

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff American Surgical Arts ("Plaintiff") brings this action against Aetna Life Insurance Company ("Defendant").

1.      This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendant's under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services.

2.      Defendant is the insurer of Genesis Administrative Services, LLC. (the "Plan"), under which the Patient, CG, was the Plan participant.  Patient CG signed an Assignment of Benefits to Plaintiff and designated Plaintiff as her Authorized Representative under ERISA.

3.      Patient CG was initially diagnosed with breast cancer when she was 47 years old. On February 14, 2017, she underwent a bilateral mastectomy, and immediately following, the first stage of bilateral breast reconstruction surgery was performed by Sean Bidic, M.D., a surgeon affiliated with Plaintiff.  He was assisted by Ashley Aloi, P.A.  On May 11, 2017, as part of the continuation of care, Dr. Bidic performed the second stage of bilateral breast reconstruction surgery.

4.      Dr. Bidic and Ms. Aloi do not participate in Defendant's network of contracted health care providers.

5.      After each of these breast reconstruction surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Defendant for a total amount of $159,088.00. Defendant reimbursed Plaintiff only $2,958.59, leaving an unreimbursed amount of $156,129.41, and taking into account patient responsibility, $150,150.20.

## JURISDICTION

6.      The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendant systematically and continuously conducts business in the State of New Jersey, and otherwise has minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over it.

8.      Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Aetna resides, is found, has an agent, and transacts business in the District of New Jersey, and (b) Aetna conducts a substantial amount of business in the District of New Jersey, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the District of New Jersey.

9.      Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where he resides or alleges that the violation of ERISA occurred.  Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## PARTIES

10.     Plaintiff American Surgical Arts, led by Board-certified surgeon Dr. Sean Bidic, specializes in breast reconstruction and other microsurgical procedures.  Its principal office is now in Mullica, New Jersey.

11.     Defendant Aetna Life Insurance Company is a health care insurance company with offices located in New Jersey and offers Aetna-branded health care insurance in the State of New Jersey.  It is the insurer for Genesis Administrative Services, LLC, CG's Plan.

## FACTUAL ALLEGATIONS

### A.     February 14, 2017 First-Stage Breast Reconstruction

12.     On February 14, 2017, Patient CG who suffered from breast cancer including invasive ductal carcinoma, underwent a bilateral mastectomy with tissue expander reconstruction at Cape Regional Medical Center.  This set of surgeries meant that the patient first would undergo a bilateral mastectomy performed by one surgeon specializing in oncology and then another surgeon who specialized in breast reconstruction and his team would perform the first stage of bilateral breast reconstruction. Both surgeries would be performed on the same day, back to back, and the patient would be in the same operating room and under the same anesthesia.

13.     Breast reconstruction is a complex surgery.  It involves the disinsertion of the pectoralis muscle and the dissection of the subpectoral muscle to the second rib.  A tissue expander is then placed in this muscular pocket.  A tissue expander expands the skin and allows the subsequent placement of the breast implant.

14.     Dr. Bidic, assisted by Ms. Aloi, performed the first-stage breast reconstruction surgery.

15.     Both Dr. Bidic and Ms. Aloi do not participate in Aetna's network.  The surgeon who performed the bilateral mastectomy and Cape Regional Medical Center were participating providers.

16.     Dr. Bidic and Ms. Aloi received prior authorization from Defendant under 97832439 to perform these medically necessary procedures.

17.     After performing this first-stage breast reconstruction surgery, Plaintiff, submitted an invoice on a CMS-1500 form, as required, for $71,862.  The billed amounts, paid amounts, and CPT codes were as follows:

**1.     Dr. Bidic**

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 19357-RT | $25,614.00 | $875.33 |
| 19357-LT | $25,614.00 | $437.66 |
| 13102 | $8,755.00 | $213.90 |
| 13101 | $5,723.00 | $36.85 |
| 15777-RT | $3,078.00 | $123.74 |
| 15777-LT | $3,078.00 | $61.87 |
| **Total** | **$71,862.00** | **$1,749.35** |

CPT 19357 is breast reconstruction, billed bilaterally as permitted for the right and left breasts. CPT 13101 and 13102 are repair and complex procedures on the integumentary [skin] system. CPT 15777 are flaps and grafts procedures, billed bilaterally as permitted.  This is an add-on code to CPT code 19357.

18.     Plaintiff also submitted an invoice on a CMS-1500 form for $40,982.00, representing the services of Ms. Aloi as surgical assistant. The billed amounts, paid amounts, and CPT codes were as follows:

**Ms. Aloi – Surgical Assistant**

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 19357-80-RT | $20,491.00 | $140.05 |
| 19357-80-LT | $20,491.00 | $70.02 |
| **Total** | **$40,982.00** | **$210.07** |

Modifier -80 denotes an assistant surgeon.

19.     Together for the February 14, 2017 surgery, Defendant determined that the Allowed Amount was $1,949.42, leaving an unpaid amount of $110,884.58.

20.     Plaintiff filed a first-level appeal concerning the amount of Defendant's reimbursement of Dr. Bidic's bill on June 9, 2017.  Defendant denied this appeal on July 12, 2017. Plaintiff filed a second-level appeal on September 11, 2017. Defendant denied this appeal on October 20, 2017.

21.     Plaintiff filed a first-level appeal concerning Defendant's reimbursement of Ms. Aloi's bill on June 9, 2017.  Plaintiff filed a second-level appeal on October 31, 2017. Defendant never responded to these appeals.

22.     Plaintiff exhausted its administrative remedies through a combination of fully complying with the Plan's internal appeals and Defendant's waiver through noncompliance.

23.     In its July 12, 2017 denial letter, Defendant stated that Dr. Bidic was entitled to 105% of the Medicare Allowable Rate under the Plan (although it quoted the "Recognized Charge" as 110% of the Medicare Allowable Rate).

**B.**     **May 11, 2017 Second-Stage Breast Reconstruction**

24.     On May 11, 2017, Dr. Bidic performed the second-stage breast reconstruction on Patient CG, inserting permanent breast implants after the tissue expander was deflated.  Plaintiff obtained prior authorization from Defendant under 17151649.

25.     Plaintiff submitted an invoice on a CMS-1500 form, as required, for $46,244.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
| --- | --- | --- |
| 19342-RT | $13,260.00 | $266.85 |
| 19342-LT | $13,260.00 | $533.70 |
| 19370-RT-59 | $9,862.00 | $99.31 |
| 19370-LT-59 | $9,862.00 | $99.31 |
| **Total** | **$46,244.00** | **$999.17** |

CPT codes 19342 and 19370 are repair or reconstruction procedures of the breast.  The modifier -59 means a district procedure that should be independently reimbursed.

26.     Defendant determined that the Allowed Amount for the May 11, 2017 surgery was $999.17, leaving an unpaid amount of $45,244.83.

27.     Plaintiff filed a first-level appeal concerning Dr. Bidic's bill on July 13, 2017. Defendant denied this appeal on August 9, 2017.  Plaintiff filed a second-level appeal on September 12, 2017. Defendant denied this appeal on October 20, 2017.

28.     In its August 9, 2017 and October 20, 2017 denial letters, Defendant stated that Dr. Bidic was entitled to 105% of the Medicare Allowable Rate under the Plan.

29.     Plaintiff exhausted its administrative remedies.

30.     Plaintiff received an Assignment of Benefits from Patient CG and Designation of Authorized Representative.  It states, in relevant part:

I, the undersigned, represent that I have valid and in-force insurance and/or employee health care benefits coverage and hereby assign and convey directly to American Surgical Arts, P.C., Dr. Sean M. Bidic, and (the "provider(s)") and their affiliated law firms, as my Statutory Derivative Beneficiary (SDB), commonly known as a Designated Authorized Representative, and a Claimant under the "Patient Protection and Affordable Care Act (PPACA), existing ERISA and other applicable and other applicable federal and state laws, of all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from the provider(s), regardless of the provider's managed care network participation status. . . . I hereby convey to the provider(s) to the full extent permissible under law and under any applicable employee group plan(s), insurance policies or liability claim, any claim, cause of action, or other right I may have to such group health plans . . . any administrative or judicial actions by the provider(s) to pursue such claim.

31.     Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), enacted in 1998, which requires group health plans to cover breast reconstruction after a mastectomy.  This law, codified at 29 U.S.C. § 1185b, states:

(a) In general. A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –

(1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient.  Such coverage may be subject to annual deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .

(d)     Rule of construction. Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

32.     29 U.S.C. § 1185b(d), which deals with negotiation of reimbursement amounts with providers, concerns participating providers.  Aetna did not negotiate with Dr. Bidic.

33.     The WHCRA was enacted in October 21, 1998 not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denial of coverage for breast

reconstruction on the basis that such reconstruction was cosmetic.  As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery.  Well, it is not.  Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic.  And that is wrong.  Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

34.    Patient CG's Plan specifically sets out the requirements of the WHCRA in the Required Notices section of the Plan's Required Notice section, noting that breast reconstruction was a covered service under the Plan.

35.    Notwithstanding this federal mandate, Defendant did not have any provider within 100 miles of Vineland, New Jersey (Defendant's then-place of business at the time of the surgeries) in its network, including the surgeon who performed the bilateral mastectomy on Patient CG, qualified to perform the two-stage breast reconstruction surgery which was performed on Patient CG.  There was no in-network provider in the hospital who could have performed the breast reconstruction on the same day as the bilateral mastectomy, so that Patient CG did not have to undergo two separate surgeries under new anesthesia – with all the accompanying risks of infection, complications, and the psychological impact of the delay in reconstruction.

36.    Dr. Bidic, a Board-certified plastic surgeon specialized in breast reconstruction with admission privileges at Cape Regional Medical Center, was part of Patient CG's team of surgeons who performed her mastectomy and the first-stage of her breast reconstruction on the same day, in the same operating room, in a back-to-back surgical procedure.

37.    Dr. Bidic completed his medical school training at the Columbia University College of Physicians and Surgeons and plastic surgery residency at the University of Pittsburgh.  He is one of only three Board-certified plastic surgeons in the nation with a Master of Fine Arts.  Dr.

Bidic completed a hand and microsurgery fellowship as a clinical instructor at both the plastic surgery and orthopedic surgery departments at the University of California, Los Angeles.

38.     Dr. Bidic was Assistant Professor of Plastic Surgery and Program Director of the Hand and Microsurgery Fellowship at the University of Texas Southwestern Medical Center, the United States' largest plastic surgery residency.  He has published extensively on the topics of plastic surgery and hand surgery, and has taught more than 50 plastic and hand surgeons who are now practicing throughout the world.

39.     Dr. Bidic is a specialist in breast surgery, including breast reconstruction, having performed hundreds of these procedures.

40.     Defendant should have, but failed, to grant Plaintiff an in-network exception.

41.     A decision to cover breast reconstruction (because it is a federal mandate) but assess the patient $156,129.41 in out-of-pocket costs is not a coverage decision.  It is, instead, a decision forcing Patient CG to self-insure her own breast reconstruction surgery, in violation of the WHCRA.

42.     It is also in violation of New Jersey law.  On May 3, 2013, the Commissioner of the New Jersey's Department of Banking and Insurance ("DOBI") issued Bulletin 13-10 based on New Jersey statutes, noting that "It has come to the Department's attention that there have been recurring instances of the inability of patients to obtain in-network benefits for the services non-network surgeons performing breast reconstruction as part of the surgical procedure in which a mastectomy is performed.  In some cases, carriers have been declining patient requests to use out-of-network surgeons, asserting the availability of in-network surgeons.  However, the in-network surgeons frequently do not perform, or are not qualified to perform, the particular type of requested reconstructive surgery."

43.     In this case, Defendant did not decline Patient CG's request to have Dr. Bidic perform her breast reconstruction surgery.  Rather, knowing that there was no in-network provider who could perform this surgery, Defendant paid Dr. Bidic the out-of-network rate which forced Patient CG to self-insure her own breast reconstruction surgery.

44.     The DOBI Commissioner continued: "In other cases, in-network oncological surgeons may be practicing as part of a team which includes out-of-network reconstructive surgeons who could participate at the same surgical session in which the mastectomy is performed, thus avoiding the need for the covered person to undergo a separate institutionalization and surgery for the breast reconstruction."

45.     This is precisely what occurred with Patient CG.

46.     The DOBI Commissioner concluded that when an insurer in New Jersey did not have a breast reconstruction surgeon in its network, it should approve the use of an out-of-network specialist but ensure that its member receive this service at the in-network co-pay amount. This requirement ensures that a cancer patient under New Jersey law and with coverage under the WHCRA, as here, does not face ruinous balance bills simply by choosing an out-of-network specialist.

47.     DOBI issued an Order Directing Remediation and Assessing Penalties against Aetna Health, Inc. in 2007, involving Aetna's setting the payment of out-of-network providers as 125% of the Medicare allowable amount.  This Order directed Aetna to cease using the percentage of Medicare allowable amount as maximum allowable charge for services rendered for an out-of-network provider pursuant to an authorization by Aetna.   It directed Aetna to reprocess the claims to pay the full billed amount less patient responsibility amounts, plus interest.

48.     Defendant should have paid Dr. Bidic his full billed charges or attempted to negotiate an agreeable resolution, because there were no Board-certified breast reconstruction

surgeons in Defendant's network who were admitted in Cape Regional Medical Center.  In fact, there were no Board-certified breast reconstruction surgeons in Defendant's network within 50 miles of Cape Regional Medical Center at all.

49.     Based on the above, Defendant should have approved Dr. Bidic as an out-of-network specialist but ensured that Patient CG received her breast reconstruction surgery at the in-network level of patient responsibility.  Instead, Patient CG was charged out-of-network-level co-pays.

50.     Defendant stated that Plaintiff was entitled to 105% of the Medicare Allowable Rate under the Plan.  However, this was not the reimbursement rate called for under the Plan.

51.     The Plan stated that the Recognized Charge for professional services would be paid at the billed amount or 105% of the Medicare allowable rate.  However, the Plan defined "Recognized Charge" as "the negotiated charge for providers with whom we have a direct contract but are not network providers or, if there is no direct contract, with whom we have a contract through any third party that is not an affiliate of Aetna."

52.     Neither Dr. Bidic nor Ms. Aloi were contracted with Defendant or had a contract with any third party (such as Multiplan) unaffiliated with Defendant.  Accordingly, the "Recognized Charge" did not apply.

53.     The Plan, however, sets out the reimbursement methodology based on the "Allowable Fee" for out-of-network providers as follows:

> The allowable fee for non-preferred provider reimbursement is the reasonable and customary charge in a geographical area.  Actual payment was made on the basis of the provider's reported service, the allowable fee, member eligibility, and all other plan provisions and/or limitations at the time the service was rendered.
> To determine the prevailing charge level, we refer to statistical profiles of physician charges for the same or similar services in a geographic area.  An independent vendor collects and maintains these charges, and we update the profiles in our claims processing systems every six months.

In evaluating whether to allow reimbursement above the normal fee, we review material submitted with the claim or the appeal, including:

■ written documentation that outlines the unusual circumstances or complexity of the care.

■ The provider's normal fee for this service when there are no unusual circumstances or complexity for the procedure in question.

54.     Defendant failed to pay reimbursement based on Plaintiff's reasonable and customary fee.  The first- and second-level appeals set out in detail the circumstances and complexity of Dr. Bidic's procedures, noting the complexity of the breast reconstruction surgeries and appending the operative reports. Defendant ignored this written documentation.

55.     29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or

other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

56.     Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

57.     Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted his administrative remedies.

58.     Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

59.     In addition, Defendant erroneously applied the multiple procedure reduction to two CPT codes.  CPT code 15777 is an add-on code to CPT code 19357.  CPT code 13102 is an add-on code to CPT code 13101.  Pursuant to the National Correct Coding Initiative ("NCCI"), which Defendant is required to follow, the multiple procedure reduction cannot be applied to add-on codes.

## COUNT I

### CLAIM FOR UNPAID BENEFITS UNDER
### EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

60.      Defendant is obligated to pay benefits to Plan participants and beneficiaries in accordance to the terms of the Plan, and in accordance with ERISA.

61.     Defendant violated its legal obligations under this ERISA-governed plan when it under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient CG by Plaintiff, in violation of the terms of the Certificate of Coverage and SPD and in violation of ERISA §

502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and for failing to provide the Certificate of Coverage and SPD to the Plan Participant and Plaintiff.

62.     Plaintiff submitted invoices to Defendant for $159,088.00.

63.     Defendant determined the Allowed Amount was $2,958.59, leaving an under-reimbursed amount of $156,129.41.  This is 98% of the billed amount, meaning that Defendant reimbursed 2% of the total amount.

64.      Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant as follows:

(a)     Ordering to recalculate and issue unpaid benefits to the Plaintiff;

(b)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(c)     Awarding prejudgment interest; and

(d)      Granting such other and further relief as is just and proper.

Dated: October 17, 2019

/s/ Michael Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

/s/ Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for American Surgical Arts, P.C.